RECEIVED
JUL 1 5 2005
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
MONROE LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel* ROBERTS, ET AL. | CIVIL ACTION NO. 02-2199 |
| VERSUS | JUDGE ROBERT G. JAMES |
| AGING CARE HOME HEALTH, INC., ET AL. | MAG. JUDGE JAMES D. KIRK |

## RULING

Pending before the Court are the United States of America's Motion to Dismiss Counterclaims Pursuant to FRCP 12(b)(1) and/or 12(b)(6) [Doc. No. 81] and Becky Roberts and Lori Purcell's Motion to Dismiss Counterclaims Pursuant to FRCP 12(b)(1) and/or 12(b)(6) [Doc. No. 89].[1] The Defendants have filed a memorandum in opposition, and the United States has filed a reply. For the following reasons, the United States's Motion to Dismiss Counterclaims [Doc. No. 81] and Becky Roberts and Lori Purcell's Motion to Dismiss Counterclaims [Doc. No. 89] are hereby GRANTED IN PART and DENIED IN PART.

### I. FACTS AND PROCEDURAL HISTORY

On October 17, 2002, Relators Becky Roberts and Lori Purcell filed a *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729-33 ("FCA"). The Complaint, which was sealed by the Court,

---

[1] The two Motions to Dismiss Counterclaims are nearly identical. As Roberts and Purcell state, "Because of the action of the U.S. Government in intervening in this matter, and the subsequent dismissal of all claims not pursued by the government, the Plaintiffs-Counter Defendants, Becky Roberts and Lori Purcell['s] assertions are the same as the Government's, and are adopted herein as is written in full." Because Roberts and Purcell's motion adopts the United States's motion word for word (except for the Introduction section and the addition of several paragraphs in Roberts and Purcell's defamation analysis), for the sake of brevity and clarity the Court will refer to both Motions to Dismiss Counterclaims collectively as the Motions to Dismiss Counterclaims. Unless specifically noted otherwise, the analysis and Ruling in this case will be equally applicable to both the United States's Motion to Dismiss Counterclaims and to Roberts and Purcell's Motion to Dismiss Counterclaims.

charged that, among other things, Aging Care Home Health, Inc., a home health services provider ("Aging Care"), and its principals, Janice Davis and Otis Davis, (collectively, "Defendants"), knowingly and willfully submitted false claims to the Medicare program.

On June 30, 2004, after five extensions and more than eighteen months, the United States elected to intervene in part and declined to intervene in part of the *qui tam* action. On July 2, 2004, the Court granted the United States's motion for intervention and partially lifted the seal for a period of three months, so that the United States could entertain settlement discussions with the Defendants. On November 8, 2004, no settlement having been reached, the United States filed an Intervenor Complaint and dismissed without prejudice the non-intervened claims of Roberts and Purcell. The United States alleges in its Intervenor Complaint that, *inter alia*, the Defendants submitted to the Medicare program false certifications and false or fraudulent claims for services that were the product of illegal relationships with physicians, all in violation of the Stark Act, 42 U.S.C. § 1395nn ("Stark Act"), and the Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b) ("Anti-Kickback Act").

On January 3, 2005, after the Defendants' Motion for Extension of Time to Answer was stricken as deficient and after the Defendants otherwise failed to answer the Intervenor Complaint or properly move for an extension to do so, the Clerk of Court entered a default as to all the Defendants. However, on February 7, 2005, the Court found good cause for the Defendants' failure to timely answer and set aside the Clerk's entry of default.

On or about February 2, 2005, Palmetto GBA, acting as intermediary for the Center for Medicare and Medicaid Services ("CMS"), suspended or denied all payments to Aging Care for services that had been provided to Medicare patients by certain physicians who held positions on Aging Care's Professional Advisory Committee ("PAC").

On February 3, 2005, the Defendants filed a Motion for a Temporary Restraining Order ("TRO") against CMS to cease and desist suspension of payments to Aging Care. After conducting

a telephone conference on the matter and after considering the briefing of both parties, the Court denied Aging Care's Motion for a TRO on February 8, 2005.

On February 11, 2005, the Defendants submitted a Motion for Reconsideration of the Court's denial of the TRO. In support of their motion, the Defendants alleged that on February 9, 2005, all payments for services provided by Aging Care had been suspended or denied by CMS. The Court again conducted a telephone conference with all parties and accepted supplemental briefing on the issue. On February 14, 2005, the Court denied the Defendants' Motion for Reconsideration.

On February 15, 2005, the Defendants submitted a Motion for Findings of Fact and Conclusions of Law regarding the Court's denial of the Motion for Reconsideration, which the Court denied on February 23, 2005.

On February 18, 2005, the Defendants filed an Answer to the Intervenor Complaint. The Answer contained five counterclaims–conversion, conspiracy to defame, conspiracy to defraud, declaratory and injunctive relief, and a counterclaim under the Equal Access to Justice Act–which are all the subject of the instant Motions to Dismiss Counterclaims.

On March 11, 2005, the Defendants filed a Motion for Preliminary Injunction.

Following a telephone status conference with the parties regarding the Motion for Preliminary Injunction, on March 11, 2005, the Court issued a Minute Entry indicating that it would consider the jurisdictional issues in Chambers based upon the record and supplemental briefs submitted by the parties. The Court also set a hearing on the application for preliminary injunction for April 1, 2005.

On March 31, 2005, after extensive briefing, the Court issued a Ruling and Judgment denying and dismissing the Motion for Preliminary Injunction for lack of subject matter jurisdiction.

On April 19, 2005, the United States filed its Motion to Dismiss Counterclaims. On May 10, 2005, the Defendants filed a Memorandum in Opposition to the United States's Motion to Dismiss Counterclaims. Also on May 10, 2005, Roberts and Purcell filed their Motion to Dismiss

Counterclaims. On May 27, 2005, the United States filed a memorandum in reply to the Defendants' opposition brief.

With full briefing by all parties now completed, the Court is prepared to rule on the pending Motions to Dismiss Counterclaims.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)

The Movants argue that all five counterclaims asserted by the Defendants in their Answer should be dismissed because "[t]he Court lacks jurisdiction of the counterclaims, there is no compelling basis upon which the [C]ourt should exercise supplemental jurisdiction over them, and/or the counterclaims fail to state a claim upon which relief can be granted."

"Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Lack of subject matter jurisdiction may be found in any one of three instances: (1) the [counterclaims] alone; (2) the [counterclaims] supplemented by undisputed facts evidenced in the record; or (3) the [counterclaims] supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (internal citations omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the [counter-claimant] constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* The court employs the same standard for review of a motion to dismiss under Rule 12(b)(1) as that for a motion to dismiss pursuant to Rule 12(b)(6). Therefore, a court may not dismiss a claim unless it appears certain that the counter-claimant "cannot prove any set of facts in support of her claim which would entitle her to relief." *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1991).

Similarly, motions to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure shall not be granted "unless it appears beyond doubt that the [counter-claimant] can prove no set of

4

facts in support of his claim which would entitle him to relief." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "The question therefore is whether in the light most favorable to the [counter-claimant] and with every doubt resolved in his behalf, the [counterclaim] states any valid claim for relief." *Id.* (citing 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 601 (1969)). In considering a motion to dismiss for failure to state a claim, the court must limit review to the contents of the pleadings, including attachments. *Id.* Conclusory allegations in a claim will not be accepted as true. Rather, in order to avoid dismissal, a claimant must plead specific facts to support his claim. *Id.*

"When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming*, 281 F.3d at 161.

## B.  Counterclaims against the United States

### 1.  Injunctive and Declaratory Relief

In their Answer, the Defendants assert a counterclaim for injunctive and declaratory relief, in which they "seek to permanently restrain the government from taking further action against Aging Care's reimbursement from Medicare arising out of the contractual relationships with the physicians who served on Aging Care's Professional Advisory Board during the relevant period as alleged in the Complaint." The Defendants also seek "a declaration by the Court that the contracts complained of by the government are valid and that they are substantially in compliance with the safe harbor requirements for financial relationships under either" the Stark Act or the Anti-Kickback Act.

Movants contend that this counterclaim should be dismissed because there is no difference between the relief requested in this counterclaim and that which the Court has already ruled upon and dismissed in its March 31, 2005 Ruling and Judgment on the Motion for Preliminary Injunction. The Movants assert that the injunctive relief counterclaim "should be dismissed forthwith for the same

reasons the preliminary injunction application was dismissed."

In response, the Defendants argue that their "counterclaim for declarative and injunctive relief differs substantially from Defendants' Motion for a Preliminary Injunction." The Defendants claim that the Motion for Preliminary Injunction sought to maintain the status quo by moving for "the provisional remedy of restraining the United States' ability to administratively punish the Defendants for conduct alleged to be illegal," whereas the counterclaim seeks to "permanently restrain the government from taking further action against Aging Care's reimbursement from Medicare arising out of the contractual relationships with physicians who served on Aging Care's Professional Advisory Board."

The Court finds that the injunctive relief requested in the Defendants' counterclaim is the same relief requested in the Defendants' Motion for Preliminary Injunction. Both the motion and the counterclaim's primary goal is to have the Court restrain the United States from interfering with Aging Care's reimbursements from Medicare. The only difference between the two requests is that the former sought preliminary injunctive relief "to maintain the status quo through trial" and the latter seeks permanent injunctive relief; the substance of the two claims is the same. Accordingly, unless the Defendants can demonstrate a change in circumstances which now provides the Court with jurisdiction to review the Defendants' claims, the Court's March 31, 2005 Ruling and Judgment, which dismissed Defendant's request for injunctive relief for lack of subject matter jurisdiction, precludes relief on the Defendants' present counterclaim for injunctive relief.

The Defendants contend that the Court now has subject matter jurisdiction because they have exhausted the prescribed administrative remedies as directed by the Court in its March 31, 2005 Ruling. The Defendants state that "[i]n the case of a payment suspension, the sole administrative remedy is a rebuttal statement, pursuant to 42 C.F.R. § 405.372(b)(2)," and that they submitted this rebuttal statement to the appropriate intermediary by letter dated April 19, 2005. As such, the Defendants claim that they have no additional administrative remedies to pursue and "have no other avenue of appeal

other than this Court."

The Court finds that, contrary to the Defendants' assertion, the Defendants still have not exhausted all administrative remedies for claims arising under the Medicare Act. *See* 42 U.S.C. § 405(g); *see also Matthews v. Eldridge*, 424 U.S. 319, 328 (1976). Title 42 of the Code of Federal Regulations, Section 405.375(c) expressly states that a determination made by CMS, the intermediary, or a carrier of a rebuttal statement submitted by a provider or supplier "is not an initial determination and is not appealable." Accordingly, the Defendants have not exhausted their claim, and, for the reasons stated in the Court's March 31, 2005 Ruling on the Motion for Preliminary Injunction, the Court still lacks subject matter jurisdiction to grant the injunctive relief requested. The Defendants' counterclaim for injunctive relief is dismissed.

The Movants also argue that the Defendants' "requested declaratory relief–namely 'a declaration that the contracts complained of by the government are valid and that they are substantially in compliance with the safe harbor'–is already squarely before the [C]ourt. The United States'[s] False Claims Act suit specifically alleges that the contracts are 'sham' agreements devised to defraud the United States by hiding Stark and Anti-Kickback violations under the guise of legitimate safe harbor relationships." The Movants therefore request that the Court "dismiss the declaratory relief request and simply allow those issues to be fully litigated in the False Claims Act suit rather than complicate and clutter that procedure with a wholly redundant counterclaim."

The Court is persuaded by the Movants' analysis of the facts, but declines to dismiss the claims outright. The Court finds that, under the relevant provisions of the Stark Act and the Anti-Kickback Act, the declaratory relief claims asserted by the Defendants in the nature of counterclaims are in reality defenses to the main claim and will treated as such in this litigation. *See* Fed. R. Civ. P. 8(c) ("When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."). The

7

Court denies the Movants' motion to dismiss the declaratory relief counterclaims, but will treat the claims as defenses to the main claim for purposes of this litigation.

### 2. Equal Access to Justice Act

The Defendants have also filed a counterclaim on the basis that they "are eligible parties to receive benefits under the Equal Access to Justice Act." The Movants assert that this counterclaim should be dismissed because "[D]efendants have not alleged that they are prevailing parties, or asserted any of the other requisite elements for a valid EAJA claim."

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, *et seq.*, provides that a prevailing party may recover expenses and attorney's fees in certain actions involving the United States. Specifically, 28 U.S.C. § 2412(d)(1)(B) provides, in relevant part: "A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection." The Court finds that Defendants have not alleged–nor could they allege at this juncture–that they are "prevailing parties" for purposes of a claim under EAJA. Unless and until the Defendants have prevailed on the merits and have demonstrated that the United States's position was not substantially justified, any claim under the EAJA is premature. As such, the Defendants' Fifth Counterclaim is hereby dismissed without prejudice for failure to state a claim upon which relief can be granted.

## C. Counterclaims against the Relators

The Defendants have asserted three counterclaims against the Relators: a conversion claim against Roberts, a conspiracy to defame claim against Roberts and Purcell, and a conspiracy to defraud claim against Roberts and Purcell.

Movants argue that all three counterclaims against the Relators should be dismissed because such claims lie outside the Court's jurisdiction and because the claims are contrary to public policy.

Rule 13 of the Federal Rules of Civil Procedure differentiates between compulsory

counterclaims, which arise "out of the transaction or occurrence that is the subject matter of the opposing party's claim," and permissive counterclaims, which are defined as "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a), (b).

"To determine whether a claim and counterclaim arise from the 'same transaction or occurrence,' federal courts have constructed analyses using as their foundation the logical relationship test developed by the Supreme Court." *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881 (5th Cir. 1998). Under the logical relationship test, "'Transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* at 882 (quoting *Moore v. New York Cotton Exch.*, 270 U.S. 593, 609-610 (1926)) The Fifth Circuit has further defined "logical relationship" as existing when "the counterclaim arises from the same 'aggregate of operative facts,' in that the same operative facts serves as the basis of both claims or the aggregate core of facts upon which the claim rests activates additional legal rights, otherwise dormant." *Plant v. Blazer Fin. Serv., Inc. of Georgia*, 598 F.2d 1357, 1360-61 (5th Cir. 1979).

Additionally, the Court must consider a four-part test to determine whether a counterclaim arises out of the same transaction or occurrence:

> (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as the defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim. An affirmative answer to any of the four questions indicates the claim is compulsory.

*Underwriters at Interest on Cover Note JHB92M10582079 v. Nautronix, Ltd.*, 79 F.3d 480, 483 (5th Cir. 1996); *see also Plant*, 598 F.2d at 1361

In the case *sub judice*, the Court finds that the main claims and the counterclaims against the

Relators do not involve the same aggregate of operative facts. The United States's Intervenor Complaint alleges that the Defendants submitted false certifications and false or fraudulent claims to the Medicare program for services that were the product of illegal relationships with physicians in violation of the Stark Act and the Anti-Kickback Act. Essentially, the United States argues that the Defendants devised a scheme to defraud the government by setting up a sham advisory board, drawing up sham contracts with providers, illegally paying the advisory board members for referrals, charging these kickbacks to the government, and intentionally submitting false claims to the Medicare program based upon such fraudulent activity.

In contrast, the Defendants' counterclaims arise from an employment relationship between Aging Care and Roberts, and focus primarily on allegations of stolen documents and defamatory statements derived from that relationship. Specifically, the Defendants' conversion counterclaim asserts that Roberts "wrongfully took dominion over certain property belonging to Aging Care." The Defendants' conspiracy to defame counterclaim asserts that Roberts and Purcell, "conspired with each other and third parties, to knowingly disseminate false statements about Aging Care and Janice and Otis Davis to third parties," including accusations that Aging Care and the Davises committed Medicare Fraud, that they paid physicians for referrals, and that they defrauded the government on Aging Care's cost reports. Finally, the Defendants' conspiracy to defraud counterclaim asserts that Roberts and Purcell conspired "to misrepresent the relationship between Aging Care and the physicians who served on Aging Care's Professional Advisory Board."

Applying the first step of the four-part compulsory counterclaim test, the Court finds that the issues of fact and law raised by the claims and counterclaims are significantly different. Adjudicating the main claims will require a determination of facts regarding the relationship between the Defendants and their advisory board, the providers, and CMS. The main claim will require a legal determination of whether the Defendants violated federal statutes by paying the advisory board members for referrals

and whether the Defendants submitted false claims to the Medicare Program. In contrast, adjudicating the counterclaims will involve determinations of whether Relators conspired to intentionally make false statements about the Defendants to third parties, whether Relators conspired to falsify statements and documents in order to defraud the Defendants, and whether Roberts converted certain property belonging to Aging Care. There are simply no legal or factual commonalities between any of the main claims and those of the counterclaims. Thus, the Court concludes that the claims and counterclaims involve discrete issues of law and fact, and the counterclaims fail to satisfy this inquiry of the compulsory counterclaims test.

Second, the Court finds that a ruling on the issues presented in the main claim would not have a preclusive effect on the counterclaims. The Court's determination on the Defendants' liability under the Stark Act and the Anti-Kickback Act would not have any res judicata effect on the Defendants' conversion, conspiracy to defame, and conspiracy to defraud claims. In fact, the Court notes that the issues presented in the counterclaims against the Relators were already filed in a state court action.[2] Thus, the Court concludes that res judicata would not bar a subsequent suit on Defendant's counterclaims, further indicating that the claims and counterclaims do not involve the same aggregate of operative facts.

Third, the Court finds that proving the main claim will not require substantially the same evidence as would be required to prove the counterclaim. In order to prove the main claims, the United States must present evidence that the Defendants paid its advisory board members for referrals rather than for services performed, that they charged illegal kickbacks to the government, that they submitted

---

[2]While not dictating a finding that a counterclaim is permissive, the fact that the state law claim was pending at the time the instant action was instituted is recited in Rule 13(a) as an optional exception to the compulsory counterclaim rule. *See* Fed. R. Civ. P. 13(a)(1); *see also White v. Imperial Adjustment Corp.* No. 99-3804, 2000 WL 1610385, at *2, n.1 (E.D. La. Oct. 26, 2000).

false claims to the Medicare program, and that they failed to disclose such matters to CMS. In contrast, in order to prove their counterclaims, the Defendants must adduce evidence that Roberts wrongfully took dominion over Aging Care's property, that Roberts and Purcell publicized false statements without privilege to third parties, and that Roberts and Purcell conspired to misrepresent Aging Care's relationship by, among other things, making false statements and falsifying documents in order to make a financial gain. There is no indication that substantially the same evidence will support both the claims and counterclaims.

Fourth, as discussed above, the Court finds that the main claims and counterclaims do not involve the same aggregate of operative facts. There has been no showing that the same operative facts serve as the basis of both claims or that separate trials on each of the respective claims would involve a substantial duplication of effort and time by the parties and the courts. Thus, under the Fifth Circuit's jurisprudence, there is a lack of a logical relationship between the claims and counterclaims.

Because the Court's analysis results in a negative response to all four inquiries of the compulsory counterclaim test, the Court determines that the Defendants' counterclaims are permissive. Although the claim and counterclaim may be tenuously connected, the Court holds that the two claims involve separate transactions and occurrences and do not form part of the same case or controversy.

The Court having found that the counterclaims are permissive rather than compulsory, the Defendants are required to establish an independent basis for federal jurisdiction for their counterclaims. *Zurn Industries v. Acton Const. Co., Inc.* 847 F.2d 234, 237 (5th Cir. 1988); *see also Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 714-15 (5th Cir. 1970); 6 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1422 (2005) ("When jurisdiction over the original claim stems from the presence of a federal question, the permissive counterclaim . . . will need its own basis of jurisdiction.")

Clearly, the Defendants' state law counterclaims for conversion, conspiracy to defame,

12

and conspiracy to defraud do not present a federal question. Additionally, since the Relators are residents of the state of Louisiana, Defendants Otis and Janice Davis are residents of Louisiana, and Defendant Aging Care is a Louisiana corporation, there is no diversity jurisdiction.

Therefore, the Court finds that the Defendants have not met their burden of establishing that their claims are within subject matter jurisdiction of the Court, and the Motions to Dismiss Counterclaims are granted as to the Defendants' counterclaims for conversion, for conspiracy to defame, and for conspiracy to defraud.

## III. CONCLUSION

For the foregoing reasons, the Motion to Dismiss Counterclaims filed by the United States [Doc. No. 81] and the Motion to Dismiss Counterclaims filed by Roberts and Purcell [Doc. No. 89] are GRANTED IN PART and DENIED IN PART. The Defendants' counterclaims for injunctive relief, for conversion, for conspiracy to defame, and for conspiracy to defraud are all DISMISSED for lack of jurisdiction over the subject matter. The Defendants' counterclaim for declaratory relief will remain, but will be treated as a defense to the main claims. The Defendants' counterclaim under the Equal Access to Justice Act is DISMISSED WITHOUT PREJUDICE for failure to state a claim upon which relief can be granted.

MONROE, LOUISIANA, this 15 day of July, 2005.

ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE