# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA EX REL. ROBERTS** | **CIVIL ACTION NO. 02-2199** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **AGING CARE HOME HEALTH, INC., ET AL.** | **MAG. JUDGE JAMES D. KIRK** |

# RULING

Before the Court is the United States' "Motion for Partial Summary Judgment against Otis Davis on Count I (False Claims Act: Presentation of False Claims) (31 U.S.C. § 3729(a)(1); Count II (False Claims Act: Making or Using False Record or Statement to Cause Claim to Be Paid) (31 U.S.C. § 3729(a)(2)); Count III (False Claims Act: Using a False Record to Avoid Payment) (31 U.S.C. § 3729(a)(7)); Count IV (Payment by Mistake); and Count V (Unjust Enrichment)" ("Motion for Partial Summary Judgment") [Doc. No. 237].

For the following reasons, the Government's Motion for Partial Summary Judgment [Doc. No. 237] is GRANTED IN PART and DENIED IN PART.

## I.  FACTS AND PROCEDURAL HISTORY[1]

Aging Care Home Health, Inc. ("Aging Care"), a home health services provider or HHA, was incorporated in 1991 with Janice Davis ("Mrs. Davis") as a Director. Mrs. Davis also served as Chief Executive Officer ("CEO") of Aging Care. Her husband, Otis Davis ("Mr. Davis"),

---

[1]Given the long history of and number of rulings in this case, the Court finds it appropriate to provide a detailed procedural history.

served as Chief Financial Officer ("CFO").

In the spring of 1997, the Davises and a former employee, Wayne Colvin ("Colvin"), met with a Medicare consultant, Reid Wilson ("Wilson). Aging Care was considering the opening of a Ruston office, and Wilson expressed concerns about costs. Around the same time, the Davises and three other employees also met with Dr. Allen Herbert, a Ruston physician. As a result of these meetings, Colvin devised a computer log spreadsheet a way to track payments to physicians. The spreadsheet was created to allow Aging Care to pay physicians a certain rate per hour times the number of hours they spent on careplan oversight. [Doc. No. 228, p. 9 n.7] ; [Doc. No. 237, Exh. 12, pp. 48-52]. Colvin gave a copy of the log to Mr. and Mrs. Davis, who approved it. [Doc. No. 237, Exh. 12, pp. 49-50].

In May 1997, Mrs. Davis, on behalf of Aging Care, sent a letter detailing the statutory requirements of Stark to Dr. Herbert. [Doc. No. 224, Exh. B]. She specifically told Dr. Herbert that he "could only [be] compensated for those duties spelled out in the Physician's Service Agreement."[2] Mr. Davis was aware of the issues which led to Mrs. Davis's letter to Dr. Herbert.

On April 20-21, 1999, Mr. Davis attended the BlueCross BlueShield Association's Medicare Audit and Reimbursement Training Program. The program included information on

---

[2]The Government asserts as an undisputed fact that Mr. Davis was aware generally of the issues which led to the letter and aware generally of the creation of the letter to Dr. Herbert. The Court agrees that the undisputed evidence shows Mr. Davis was aware of the issues. However, the evidence is not clear that he knew about the creation of the letter. In the deposition cited by the Government, Colvin testified that he prepared the letter signed by Mrs. Davis and that Mr. Davis "probably" read the letter, but that was his "assumption." [Doc. No. 237, Exh. 12, pp. 111, 134]. As the Government is aware, an assumption is certainly not an undisputed fact and cannot be considered as such by the Court. While Mr. Davis did not technically deny this "fact" in his opposition memorandum or in his statement of facts, the Court does not find the evidence in the record to support the Government's assertion.

the Stark Statute and the then-proposed amendments on prohibited referrals by HHAs. [Doc. No. 237, Exh. 14].

From September 1999 to November 2003, Aging Care compensated five physicians for performing advisory services: Drs. Hayan Orfaly, Steven McMahan, Michael McCormick, John Coats, and Allen Spires. [Doc. No. 149, Exhs. 8-13]. Pursuant to Aging Care's Physician Medical Service Agreements, the physicians agreed to review patients' charts and plans of care, participate in regular meetings to review and discuss quality of care issues, and participate in training and evaluation of staff. [Doc. No. 149, Exhs. 1-7].

However, the physicians were actually paid based on the computer log spreadsheet created by Colvin, which tracked the time the doctors spent caring for patients, not on contractual duties. Dr. Orfaly testified that payment for the patient care duties he was already performing was unnecessary and inappropriate. [Doc. No. 228, p. 9]. Other physicians testified that they did not perform any duties at all for their compensation.

Mr. and Mrs. Davis, along with their Medicare consultant, Wilson, participated in the decisions to make payments to the physicians. [Doc. No. 237, Exh. 14, Defendants' Responses to Interrogatory #2]. As CFO, Mr. Davis personally signed some of the checks compensating the Advisory Board physicians,[3] Drs. Orfaly, McMahan, McCormick, Coats, and Spires. Mr. Davis received a salary of between approximately $105,000.00 and $148,000.00 for the work he did for the corporation during the year 2000-2003. [Doc. No. 237, Exh. 8].

On June 6, 2002, Mr. Davis, as CFO, signed a certification to accompany a cost report to Medicare. The certification provides as follows:

_____

[3]Other checks were signed by Mrs. Davis. [Doc. No. 237, Exh. 7].

Misrepresentation or falsification of any information contained in this cost report may be punishable by criminal, civil and administrative action, fine and/or imprisonment under federal law. Furthermore, if services identified in this report were provided or procured through the payment directly or indirectly of a kickback or were otherwise illegal, criminal, civil and administrative action, fines and/or imprisonment may result.

CERTIFICATION BY OFFICER OR DIRECTOR OF THE AGENCY

I HEREBY CERTIFY that I have read the above statement and that I have examined the accompanying Home Health Agency Cost Report and the Balance Sheet and Statement of Revenue and Expenses Prepared by

Aging Care Home Health, Inc., 19-7427

for the cost report beginning 01/01/2000 and ending 12/31/2000, and that to the best of my knowledge and belief, it is a true, correct and complete report prepared from the books and records of the provider in accordance with applicable instructions, except as noted. I further certify that I am familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations.

[Doc. No. 237, Exh. 3]. With the exception of the year certified, Mr. Davis signed identical certifications on September 20, 2002; May 16, 2003; and May 13, 2004.[4] [Doc. No. 237, Exhs. 4-6].

In 2003, Mr. Davis obtained a 50% interest in Aging Care. [Doc. No. 237, Exh. 1, ¶ 14].

During this same time period, Aging Care billed the Medicare program and was reimbursed for services furnished to patients of these physicians. [Declaration of Special Agent Jeffrey M. Richards] ("Richards Decl."). The Medicare program paid Aging Care $427,503.88 as a result of these claims. [Richards Decl., ¶ 11].

---

[4]The three later certifications were for the calendar years 2001, 2002, and 2003, respectively.

On March 10, 2006, the Government filed a Motion for Partial Summary Judgment against Mrs. Davis and Aging Care seeking judgment as a matter of law on their claims of payment by mistake and unjust enrichment .  [Doc. No. 149]; *see also* [Doc. No. 169 (Reply)]. Defendants opposed the Government's Motion for Partial Summary Judgment [Doc. Nos. 158 & 159].

On February 16, 2007, the Court issued a Memorandum Ruling [Doc. No. 199], declining to adopt the Report and Recommendation of the Magistrate Judge on the Government's Motion for Partial Summary Judgment.  The Court ruled that Defendant Aging Care violated Stark II[5] and that Aging Care and Mrs. Davis are liable to the Government under theories of payment by mistake and unjust enrichment.  The Court ordered Defendants to pay $427,503.88 with post-judgment interest at the legal rate set by 28 U.S.C. § 1961(a) computed daily and compounded annually until the Government is paid in full.  The Court declined to award pre-judgment interest.

On August 29, 2007, the Government filed a "Motion for Partial Summary Judgment against Aging Care and Mrs. Davis on Count I (False Claims Act: Presentation of False Claims) (31 U.S.C. § 3729(a)(1), Count II (False Claims Act: Making or Using False Record or Statement to Cause Claim to Be Paid) (31 U.S.C. § 3729(a)(2)), and Count III (False Claims Act: Making or Using False Record or Statement to Avoid an Obligation to Refund) (31 U.S.C. § 3729(a)(7))" ("Second Motion for Partial Summary Judgment") [Doc. No. 224].

Defendants Aging Care and Mrs. Davis did not oppose the Government's Second Motion for Partial Summary Judgment.

---

[5]The Ruling stated that "Defendants" violated Stark II, but only Aging Care, an entity, could have violated Stark II.  Accordingly, to the extent that the Court stated otherwise, that portion of its Ruling is VACATED.  For further discussion, *see* n.9, *infra*.

On December 18, 2007, the Court issued a Ruling and Judgment [Doc. Nos. 228 & 229] granting the Government's Second Motion for Partial Summary Judgment.

On January 30, 2008, Magistrate Judge Kirk held a status conference with the parties to discuss the remaining claims in the case. The Government was permitted three weeks in which to file an Amended Complaint to add claims under the False Claims Act against Mr. Davis and then two additional weeks to file a motion for summary judgment against Mr. Davis. Mr. Davis was permitted two weeks to respond.

On February 11, 2008, the Government filed an Amended Complaint [Doc. No. 236] adding claims under the False Claims Act against Mr. Davis.

On February 27, 2008, the Government filed the pending Motion for Partial Summary Judgment [Doc. No. 237] against Mr. Davis.

On March 19, 2008, Defendants filed an Answer to the Amended Complaint and asserted five counterclaims.

On March 26, 2008, Mr. Davis filed a Memorandum in Opposition [Doc. No. 242] to the Government's Motion for Partial Summary Judgment against him.

On March 31, 2008, the Court issued a Minute Entry [Doc. No. 243] requiring the Government to respond by April 14, 2008, to Mr. Davis's points that he "was not deposed in this matter, that he did not have an ownership interest in Aging Care until 2003, and that only physicians and designated health services can violate Stark II." Mr. Davis was given the opportunity to file a sur-reply no later than April 28, 2008.

On April 7, 2008, the Government filed a Motion to Dismiss Defendants' Counterclaims. Defendants did not oppose the Motion to Dismiss.

On April 14, 2008, the Government filed its Reply [Doc. No. 246] in support of the Motion for Partial Summary Judgment against Mr. Davis.

Mr. Davis did not file a sur-reply in opposition to the Motion for Partial Summary Judgment against him.

On June 2, 2008, Magistrate Judge Kirk issued a Report and Recommendation, recommending that the Court grant the Government's Motion to Dismiss be granted. On July 1, 2008, having received no objections, the Court adopted the Report and Recommendation and granted the Government's Motion to Dismiss Defendants' counterclaims.[6]

## II.   LAW AND ANALYSIS

In its Motion for Partial Summary Judgment, the Government argues, first, that Mr. Davis is estopped from contesting the Court's prior rulings against Mrs. Davis and Aging Care. After application of collateral estoppel principles, the Government contends that, based on its additional evidence, there is no genuine issue of material fact as to its claims against Mr. Davis. The Government argues that Mr. Davis participated in and benefitted from the unlawful claims submitted to Medicare and is thus liable under theories of payment by mistake or, alternatively, unjust enrichment. The Government argues further that Mr. Davis is liable under the False Claims Act because he submitted, or caused to be submitted, to the Government false claims and cost report certifications when he knew that Aging Care was violating the Stark Statute.

Mr. Davis opposes the Government's Motion for Partial Summary Judgment in part. Although he does not oppose the Government's collateral estoppel argument, he argues that the

_____

[6]Defendants' "counterclaim" for declaratory relief was not dismissed, but characterized as a defense to the main claim.

evidence is insufficient on the claims against him. He points out that he was not deposed and that he was not even mentioned in the statement of facts supporting the Government's previous Motion for Partial Summary Judgment against Aging Care and Mrs. Davis on Counts IV (Payment by Mistake) and Count V (unjust enrichment). He contends that the Government cannot prove its claims of payment by mistake and unjust enrichment based upon the "new" facts accompanying this Motion for Partial Summary Judgment: that he is part owner of Aging Care, received a salary, and signed several of Aging Care's cost reports. Finally, he contends that he is not liable under the False Claims Act because the Government cannot show that the cost certifications he signed were a prerequisite and material to Medicare's payments.

### A.    Motions for Summary Judgment

"A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-27 (1986). When considering a motion for summary judgment, the court must view the "evidence and inferences from the summary judgment record" in the "light most favorable to the nonmovant." *Minter v. Great Am. Ins. Co. of N.Y.*, 423 F.3d 460, 465 (5th Cir.2005).

The moving party bears the initial burden of informing the court of the basis for its motion by identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which highlight the absence of genuine issues of material

fact.  *Celotex*, 477 U.S. at 323; *Topalian v. Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992).[7]  A

fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit

under applicable law in the case.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A

dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder

could render a verdict for the nonmoving party.  *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving

party to establish the existence of a genuine issue of material fact for trial.  *Norman v. Apache*

*Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994).  "The party opposing summary judgment is required

to identify specific evidence in the record and to articulate the precise manner in which the

evidence supports his or her claim."  *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th

Cir. 1998); *see also* Fed. R. Civ. P. 56(e)(2) (If "a motion for summary judgment is properly

made and supported, an opposing party may not rely merely on allegations or denials in its own

pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out

specific facts showing a genuine issue for trial.  If the opposing party does not so respond,

summary judgment should, if appropriate, be entered against that party.").  "Conclusional

allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and

legalistic argumentation do not adequately substitute for specific facts showing a genuine issue

for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *see also Matsushita Elec. Indus.*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (Nonmovant must produce more than

---

[7]However, if the movant relies on deposition testimony, he is not to file the entire
deposition into the record, only those portions "necessary to" the motion.  LR 26.7M & W.  Mr.
Davis complained in his opposition memorandum that the Government "cherry-picked" portions
of the depositions to submit to the Court, but he failed to show how other portions of those
depositions or other evidence undermined the Government's case against him.

"some metaphysical doubt as to the material facts.").

When a nonmovant fails to provide a response identifying the disputed issues of fact, the court may accept the movant's description of the undisputed facts as prima facie evidence of its entitlement to judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 173-74 (5th Cir. 1999); *NorDar Holdings, Inc. v. W. Sec. (USA) Ltd* ., No. 3:96-CV-0427-H, 1996 WL 739019, *2 (N.D. Tex. Dec. 18, 1996).

### B. Collateral Estoppel

The Government contends that Mr. Davis is collaterally estopped from contesting the Court's prior rulings on the following issues:

(1)     as defined by the Stark Statute, Aging Care had "financial relationships" with the five physicians from whom Aging Care received patient referrals;

(2)     Aging Care's financial relationships with these physicians did not comply with the Stark Statute;

(3)     Aging Care violated the Stark Statute by billing the Medicare program for services furnished pursuant to referrals from the five physicians;

(4)     Aging Care made false certifications of compliance with the Stark Statute which were material to the Medicare program's decision to pay claims; and

(5)     Aging Care received Medicare reimbursements totaling $427,503.88 from its prohibited relationship with the five physicians.

[Doc. No. 237, pp. 4-5]. Mr. Davis did not make any argument in opposition to the application of the collateral estoppel principles on these issues.

In the Fifth Circuit, a prior judgment has collateral estoppel effect if (1) the issue in the current suit is identical to the issue in the prior action; (2) the issue was actually litigated in the prior action; and (3) the determination of the issue in the prior action was a necessary part of the

10

judgment in the earlier action. *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 868 (5th Cir. 2000);

*see also Meza v. General Battery Corp.*, 908 F.2d 1262, 1273 (5th Cir. 1990) (citations omitted).

Under the Due Process Clause, "a judgment [cannot bind] a litigant who was not a party or a

privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore*,

439 U.S. 322, 327 n.7 (1979) (citing *Blonder-Tongue Laboratories, Inc. v. University of Ill.*

*Found.*, 402 U.S. 313, 329(1971)). "Privity is merely another way of saying that there is

sufficient identity between the parties" for preclusion to apply. *See generally, Meza*, 908 F.2d at

1266. The Fifth Circuit Court of Appeal has identified three circumstances in which privity

applies:[8]

> (1)     where the non-party is the successor in interest to a party's interest in the property;
>
> (2)     where the non-party controlled the prior litigation; and
>
> (3)     where the non-party's interests were adequately represented by a party to the original suit.

*Id.*

In this case, the application of collateral estoppel or issue preclusion is unusual because

the Government seeks to apply it in the same, not a subsequent, action.[9] However, the

---

[8]Although these principles were cited in application of res judicata or claim preclusion principles, they also apply to issue preclusion. *See Terrell v. DeConna*, 877 F.2d 1267, 1270 (5th Cir. 1989).

[9]The Government refers to collateral estoppel, but then cites the Court to law on res judicata. Because of the procedural history of this case, the Government's offensive use of the Court's prior rulings actually implicates portions of the law on res judicata, collateral estoppel, and law-of-the-case doctrine. Res judicata normally applies when the same cause of action is asserted in subsequent litigation; whereas, collateral estoppel normally applies to different causes of action. The Court has also considered whether it might also recognize its prior rulings under

11

Government's request is proper because the Court has issued judgments necessarily based on these issues in the prior motions for partial summary against Aging Care and Mrs. Davis.

Of the three circumstances, Mr. Davis is not a successor in interest, but the Court finds that issue preclusion is properly applied against him under the second and third circumstances. Mr. and Mrs. Davis are 50% shareholders in Aging Care and retained the attorneys who represent all Defendants. Although in the first two motions for partial summary judgment, the Government did not seek judgment against Mr. Davis, it did seek judgment against his corporation, and he had control of the litigation against Aging Care.

Mr. Davis's interests were also adequately represented. The attorneys retained to represent all Defendants filed an opposition memorandum to the Government's first motion for partial summary judgment against Aging Care and Mrs. Davis. Aging Care and Mrs. Davis did not oppose the Second Motion for Partial Summary Judgment. Given the fraudulent conduct she engaged in, *see* [Doc. No. 228, pp. 10-12], Mrs. Davis apparently could not oppose the Second Motion for Partial Summary Judgment without incriminating herself. If the Government had

the law-of-the-case doctrine, which "expresses the practice of courts generally to refuse to reopen what has been decided." *United States v. Lawrence*, 179 F.3d 343, 351 (5th Cir.1999). "[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

However, the Government's argument does not fall precisely into any one of the three categories. While the same causes of action have been asserted in this case against all Defendants, no judgment was actually rendered against Mr. Davis. Moreover, even though the Court has determined that he was in privity with Aging Care, the Court cannot stand on its prior rulings alone, but must still address facts specific to Mr. Davis prior to rendering judgment. Thus, res judicata does not appear to be the proper fit. The law-of-the-case doctrine is not quite the right fit either because the Court's finding, at least in part, was an application of the law to the undisputed facts. Therefore, the Court has concluded that collateral estoppel should be applied.

obtained judgments only against Mrs. Davis, then the Court could not say that Mr. Davis's interests had been adequately represented. However, Aging Care also had the opportunity to defend against the Second Motion for Partial Summary Judgment and failed to do so. Mr. Davis's interests were adequately represented by Aging Care. Finally, the Court notes that Mr. Davis is not automatically liable to the Government merely by application of issue preclusion; the Court must inquire into his own actions.[10]

### C. Common Law Theories of Recovery

#### 1. Payment by Mistake

"The Government by appropriate action can recover funds which its agents have wrongfully, erroneously, or illegally paid." *United States v. Medica-Rents Co.*, 285 F. Supp. 2d 742, 776 (N.D. Tex. 2003) (quoting *United States v. Wurts*, 303 U.S. 414, 415 (1938)). To prevail on a claim for payment by mistake (also known as payment by mistake-of-fact), the Government must show that the Medicare program "made. . . payments under an erroneous belief which was material to the decision to pay." *United States v. Mead*, 426 F.2d 118, 124 (9th Cir. 1970) (citing *Wurts*, 303 U.S. at 414). The Government "is entitled to obtain repayment from a third party into whose hands the mistaken payments flowed where that party participated in and benefitted from the tainted transaction." *LTV Educ. Sys. Inc. v. Bell*, 862 F.2d 1168, 1175 (5th Cir. 1989).

Aging Care's 1999-2003 cost reports to the Medicare program each contained express and implied certifications of compliance with Stark II. [Doc. No. 149, Exh. 32; Doc. No. 30,

---

[10]Even if the Court did not apply issue preclusion, the Court concludes that, after a review of the record and the law it would analyze each of the issues identified by the Government in the same manner it did in its prior rulings.

Exhs. 3-7]. Mr. Davis personally signed the cost certifications for the years 2000-2003. This Court has previously determined, and Mr. Davis is estopped from contesting, that "these certifications were false and material to the Medicare program's decision to pay." [Doc. No. 199, pp. 12-13 (citing *United States v. Rogan,* No. 02-3310, 2006 U.S. Dist. LEXIS 71215, at *84 (N.D. Ill. Sept. 29, 2006))].

The undisputed evidence further shows that throughout this period Mr. Davis served as CFO of Aging Care. During the years 2000-2003, Mr. Davis received a salary of between approximately $105,000.00 and $148,000.00. He also became a 50% shareholder of Aging Care in 2003, which, according to his wife's testimony, merely put on paper what they believed the community property laws already provided. Accordingly, the Court finds it appropriate to hold Mr. Davis individually liable as a third party for the Medicare payments made to Aging Care.

Therefore, the Government's Motion for Partial Summary Judgment against Mr. Davis for payment by mistake is GRANTED, and the Government is entitled to recover the amounts improperly paid to Aging Care from Mr. Davis.

### 2. Unjust Enrichment

In the alternative, the Government claims that it is entitled to recovery under a theory of unjust enrichment. The Government argues that Mr. Davis is personally liable because he was unjustly enriched by his annual salary in 2002, 2003, and 2004 through fraudulently-obtained Medicare payments.

To prevail on a claim for unjust enrichment under federal common law, the Government must show: "(1) [it] had a reasonable expectation of payment, (2) [the defendant] should reasonably have expected to pay, or (3) 'society's reasonable expectations of person and property

14

would be defeated by nonpayment.'"  *Rogan*, 2006 U.S. Dist. LEXIS 71215, at *96 (citing

*Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 993-94 (4th Cir. 1990)).

Mr. Davis was unjustly enriched by both his salary during this time period and his interest

in Aging Care, formalized in 2003.  *See, e.g., id.* ("As discussed above, Rogan received

substantial financial benefits from his affiliation with Edgewater and entities, made through their

management contracts with Edgewater, which were owned and controlled by Rogan; as a result,

Rogan was unjustly enriched.").

Therefore, the Government's Motion for Partial Summary Judgment for unjust

enrichment is GRANTED, and the Government is entitled to recover the amounts improperly

paid to Aging Care from Mr. Davis.

### D.    False Claims Act

The Government claims that Mr. Davis violated the False Claims Act ("FCA") by

knowingly submitting or causing to be submitted false claims and cost report certifications to

Medicare.

As an initial matter, Mr. Davis argued, and the Government concedes, that only

physicians and HHAs can violate the Stark Statute.  *See*  42 U.S.C. § 1395nn(a)(1), (g)(1) &

(h)(6).  Therefore, to the extent that any of the Court's prior rulings find or imply that Mrs. Davis

individually violated Stark or Stark II**,** those portions of the Court's prior rulings and judgments

are VACATED as contrary to law and in the interest of justice.  *See* [Doc. Nos. 199, 200, 228 &

229];[11] Fed. R. Civ. P. 60(b)(6); *McDowell v. Celebrezze*, 310 F.2d 43, 44 (5th Cir. 1962).

However, the Court agrees with the Government that this determination does not mandate a ruling in favor of Mr. Davis if the Government shows that Mr. Davis "participat[ed] in Stark violations," and the Government otherwise meets its burden as to the claims against Mr. Davis. [Doc. No. 246, p. 10]. *See United States v. Raymond & Whitcomb Co.*, 53 F. Supp.2d 436, 445 (S.D. N.Y. 1999) (The FCA imposes liability on "'any person who knowingly assisted in causing the government to pay claims which were grounded in fraud.'") (quoting *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 544-45 (1943)).

The FCA, 31 U.S.C. § 3729, states in relevant part:

(a)     Liability for certain acts.-Any person who-

   (1)     knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval; [or]

   (2)     knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or]

   . . .

   (7)     knowingly makes, uses, or causes to be made or used, a false

---

[11]Although, technically, the Court's Judgments referred to a Stark II violation by Mrs. Davis, the claims against her were under common law and the FCA. Therefore, the Court's ruling and judgments should have indicated that Mrs. Davis participated in or caused the Stark II violation by Aging Care, which is, of course, an HHA. The Court's determinations as to claims of unjust enrichment and payment by mistake and under the FCA against Mrs. Davis stand for the reasons stated by the Court in those rulings, as well as for the additional reasons stated in this Ruling. [Doc. No. 199, p. 8; Doc. No. 228, pp. 4-12].

> record or statement to conceal, avoid, or decrease an obligation to
> pay or transmit money or property to the Government,

> . . .

> is liable to the United States Government. . . .

31 U.S.C. § 3729(a)(1)-(2),(7).

The statute also defines key terms. "[T]he terms 'knowing' and 'knowingly' mean that a person, with respect to information . . . (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required." 31 U.S.C. § 3729(b).

### 1. Section 3729(a)(1)

In order to prevail on its claims, the Government must demonstrate that Mr. Davis violated § 3729(a)(1) by presenting or causing to be presented a claim, record, or statement to the federal government; (2) the claim, record, or statement was false or fradulent; (3) Mr. Davis had knowledge, as defined by § 3729(b), that the claim, record, or statement was false or fraudulent[12]; and (4) whatever makes the claim, record, or statement false or fraudulent is material to Aging Care's entitlement to receive payment from the Government. *See* 31 U.S.C. § 3729(a); *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir.1997) ("FCA interdicts material misrepresentations made to qualify for government privileges or

---

[12]*See Allison Engine v. United States*, 128 S. Ct. 2123, 2130 (2008) (The definition of "knowledge" in Section 3729(b) does not require specific intent "with regard to the truth or falsity of the 'information.'").

services."); *United States v. Southland Management Corp.*, 326 F.3d 669, 679 (5th Cir. 2003) (en

banc) ("there should no longer be any doubt that materiality is an element of a civil [FCA] case")

(Jones, J., concurring) (citing *Thompson*, 125 F.3d at 902); *Southland Management*, 326 F.3d at

676-77("While this court has indicated that the [FCA] contains a materiality element, we have

not yet clarified the exact nature of this requirement.").

This Court has previously found that Aging Care violated Stark II[13] by billing the

Medicare program for services furnished pursuant to a prohibited referral to five physicians.

Specifically, the Court found that five cost report certifications for the years 1999-2003 that

Aging Care submitted to Medicare for the five physicians violated Stark II and were "false and

material to the Medicare program's decision to pay . . ." 615 claims [Doc. No. 199, pp. 12-13].[14]

Medicare conditions payment of a claim upon a claimant's certification of compliance with the

Stark laws. *See United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 20

---

[13]Violations of Stark II or any other law, without more, do not create liability under the FCA. *Thompson*, 125 F.3d at 902 ("[V]iolations of law, rules, or regulations alone do not create a cause of action under the FCA.") (quoting *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir.1996)).

[14]The Fifth Cicuit has explained Stark II as follows:

Stark II became effective January 1, 1995, and prohibits physicians from referring Medicare patients to an entity for certain "designated health services," including inpatient and outpatient hospital services, if the referring physician has a nonexempt "financial relationship" with such entity. 42 U.S.C. § 1395nn(a)(1), (h)(6). Like its predecessor, Stark II provides that the entity may not present or cause to be presented a Medicare claim for services furnished pursuant to a prohibited referral, and expressly prohibits payment of Medicare claims for services rendered in violation of its provisions. 42 U.S.C. § 1395nn(a)(1), (g)(1).

*Thompson*, 125 F.3d at 902.

F.Supp.2d 1017, 1042 (S.D. Tex. 1998) ("The cost report and certification process is a self-policing mechanism that is critical to the national effort to prevent and remedy fraud and abuse in the public health care financing system, [including Medicare,] since the government can review only a small fraction of the claims submitted and therefore must rely on them."); *see also United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 243 (3rd Cir. 2004) ("A certificate of compliance with federal health care law is a prerequisite to eligibility under the Medicare program.") (citing 42 C.F.R. § 413.24(f)(4)(iv); *Thompson*, 125 F.3d at 902). Mr. Davis signed four of the five cost certifications and thus presented or caused to be presented a false or fraudulent claim for payment.

Given these findings, the Court need only address the scienter requirement of the FCA. Having reviewed the record, the Court finds that Mr. Davis had sufficient knowledge or reckless disregard of the truth to warrant his liability under the FCA as a matter of law.

The Government has presented evidence that Mr. Davis served as CFO of Aging Care during the entire relevant period. In 1999, Mr. Davis personally attended training on the requirements of Medicare billing where Stark and the proposed amendments were discussed. Despite his knowledge of the billing requirements, he approved compensation arrangements with the physicians, signed checks payable to the five physicians, and even signed some of the physician agreements, albeit as a witness. Mr. Davis was aware of and had approved the computer log system developed by Colvin, which continued to be used during the entire relevant period and which tracked the time the doctors spent caring for their own patients, not on contractual duties. Other physicians, such as Dr. McMahan and Dr. McCormick, testified that they were not performing contractual duties and told representatives of Aging Care that they were

not. Yet, Mr. Davis certified on cost reports for 2000-2003 that he was "familiar with the laws and regulations regarding the provision of health care services, and that the services identified in this cost report were provided in compliance with such laws and regulations."

The Government has proven as a matter of law that Mr. Davis had the scienter required for liability under § 3729(a)(1), and its Motion for Partial Summary Judgment on this claim is GRANTED.

## 2.    Section 3729(a)(2)

The Government also moves for summary judgment on its claim that Mr. Davis violated § 3729(a)(2) by knowingly making, using or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.

Since the Court's Ruling on the Government's Second Motion for Partial Summary Judgment, the Supreme Court issued a decision providing more guidance on the requirements of a claim under § 3729(a)(2). In *Allison Engine Co. v. United States*, 128 S. Ct. 2123 (2008), the Supreme Court explained that "[w]hat § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made the false record or statement for the purpose of getting 'a false or fraudulent claim paid or approved by the Government.'" *Id.* at 2130. These type of claims are brought generally against subcontractors who submit a false or fraudulent claim, statement or record to a contractor, intending for the contractor to use the claim, statement or record to get the Government to pay. *Id.* However, the Supreme Court explained that

> [t]his interpretation of § 3729(a)(2) does not render superfluous the portion of § 3729(c) providing that a "claim" may be made to a contractor, grantee, or other

20

recipient of Government funding. This language makes it clear that there can be liability under §§ 3729(a)(1) and (2) where the request or demand for money or property that a defendant presents to a federal officer for payment or approval, § 3729(a)(1), or that a defendant intends "to get ... paid or approved by the Government", § 3729(a)(2), may be a request or demand that was originally "made to" a contractor, grantee, or other recipient of federal funds and then forwarded to the Government.

*Id.* at 2129.

In these type of claims, the Government must show both that the defendant had knowledge that the information conveyed was false or fraudulent and that the "defendant's purpose in making or using the false record or statement" was to get a claim paid or approved by the Government.  *Id.* at 2128, 2130 n.2.

For the reasons stated above, the Court finds that the Government has also provided sufficient proof that Mr. Davis had actual knowledge or recklessly disregarded the truth that Aging Care violated Stark and signed cost certifications "to get" Medicare to pay Aging Care. The Government's Motion for Partial Summary Judgment under § 3729(a)(2) is also GRANTED.

**3.     Section 3729(a)(7)**

Finally, the Government moves for summary judgment on its claim that Mr. Davis violated § 3729(a)(7) by knowingly making, using, or causing to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government.   Unlike in the case against Mrs. Davis, however, the Government has not presented the type of evidence against Mr. Davis showing that he concealed an obligation to pay or transmit money to the Government.  While he may arguably have violated the statute by

failing to re-pay Medicare once Aging Care received monies in violation of Stark, the Court is

not convinced, based on the evidence submitted, that Mr. Davis violated this section of the FCA.

*Cf. United States ex rel Ward v. Commercial Metals Co.*, C.A. No. C-05-56, 2007 WL 1390612,

(S.D. Tex., May 9, 2007) (Defendant allegedly used to sweep all assets out of its subsidiaries on

a daily basis so that they never had any money to pay a judgment to the United States).

Accordingly, the Government's Motion for Partial Summary Judgment on its

§ 3729(a)(7) claim is DENIED.

### E.    Remedies

Having determined that the Government prevails on both its common law and FCA

claims against Mr. Davis, the Government is entitled to recover damages.

Under the FCA, the Court finds that it is required to award treble damages and a fine of

not less than $5,500 nor more than $11,000 per claim.  *See* 31 U.S.C. § 3729(a); 28 U.S.C. §

2461 (amending 31 U.S.C. § 3729(a) to permit the increase of the fines by regulation); 64 Fed.

Reg. 47099, 47104 (1999) (increasing the minimum fine from $5,000 to $5,500 and the

maximum fine from $10,000 to $11,000 for violations occurring after September 29, 1999); *see*

*also United States v. Texas Tech Univ.*, 171 F.3d 279, 282 n.2 (5th Cir. 1999) (The relator sought

to "collect a Texas-sized reward based on her allegations of over 400,000 false claims (which

could generate fines of between $5,000 and $10,000 **each**) and over $20 million in overpayments

(which § 3729(a) would treble))." (emphasis added).  The Government also requests post-

judgment interest computed daily and compounded annually until the Government is paid in full.

Thus, the United States is entitled to recover three times its single damages, of

$427,503.88 for a total award of $1,282,511.64.[15]  31 U.S.C. § 3729(a).  Defendants shall be

ordered to pay this amount jointly and severally.  *See Mortgages, Inc. v. U.S. District Court*, 934

F.2d 209 (8th Cir. 1991) (citing *United States v. Aerodex*, 469 F.2d 1003, 1012 (5th Cir. 1972));

*see also United States of America v. Century Health Services*, 136 F. Supp.2d 876, 895 (M.D.

Tenn. 2000) (corporate officers are liable in their individual capacities under the FCA if they

knowingly or with reckless disregard make false claims for payment on behalf of the

corporation).

   Given the large amount of damages in this case, the evidence presented, and the totality

of the circumstances, the Court imposes a fine of $5,500 for each false claim contained in the

615 claims for payment for a total fine of $3,382,500.00.[16]

   The Government is entitled to post-judgment interest under 28 U.S.C. § 1961(a)

computed daily and compounded annually until the Government is paid in full on the total

amount of $4,665,011.64.[17]

   No additional damages are appropriate under the Government's common law claims of

payment by mistake and unjust enrichment as the Court has already ordered Mr. Davis to pay the

---

   [15]While the Court points out the award of damages due the Government under the
theories of payment by mistake and unjust enrichment, the Government can only recover the
$427,503.88 it paid to Aging Care, not double that amount, plus the statutory damages and fines
under the FCA.

   [16]The Government did not request imposition of additional fines based on Mr. Davis's
false certifications.

   [17]"Such interest shall be calculated from the date of the entry of the judgment, at a rate
equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of
Governors of the Federal Reserve System, for the calendar week preceding. [sic] the date of the
judgment."  28 U.S.C. § 1961(a).

$427,503.88 plus treble damages, fines, and post-judgment interest.

## III.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the Government's Motion for Partial Summary Judgment [Doc. No. 237]. The Motion is GRANTED as to the Government's claims of payment by mistake, unjust enrichment, and under the FCA §§ 3729(a)(1) and (a)(2). The Motion is DENIED as to the Government's claim under the FCA § 3729(a)(7).

Judgment is entered in favor of the Government and against Mr. Davis in the amount of $1,282,511.64 in damages and $3,382,500.00 in fines, for a total of $4,665,011.64 with post-judgment interest on the total award at the legal rate set by 28 U.S.C. § 1961(a) computed daily and compounded annually from the date of entry of judgment until the Government is paid in full.

MONROE, LOUISIANA, this 25th day of July, 2008.


ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE